IN THE UNITED STATES DISTRICT COURT IN AND FOR THE
NORTHERN DISTRICT OF FLORIDA, TALLAHASSEE DIVISION

| | |
|---|---|
| Alexander Greenfield,<br><br>                 Plaintiff,<br><br>v.<br><br>Florida State University and<br>Florida State University Board<br>of Trustees,<br><br>                 Defendants. | CIVIL ACTION<br><br>Case No. _____ |

## **COMPLAINT**

1. Plaintiff, Alexander Greenfield ("Mr. Greenfield"), hereby sues Defendant, Florida State University ("FSU") and Florida State University Board of Trustees ("FSUBOT") (collectively, "Defendants"), and pursuant to Rule 8, Federal Rules of Civil Procedure, alleges the following:

**Nature of the Action**.

2. Mr. Greenfield, who has a disability, brings this civil action against Defendants FSU and FSUBOT under Title II of the Americans with Disabilities Act (42 U.S.C. §§ 12131–12165) ("ADA") and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) ("Section 504") because FSU and FSUBOT acted irresponsibly, thoughtlessly, and with "deliberate indifference" by failing to provide

1

adequate and appropriate accommodations to Mr. Greenfield, embarrassing and humiliating Mr. Greenfield based on his disabilities, revealing Mr. Greenfield's disabilities and his need for accommodations to Mr. Greenfield's fellow students, inflicting pain and suffering on Mr. Greenfield, and ultimately causing Mr. Greenfield to develop Post-Traumatic Stress Disorder ("PTSD").

3. Mr. Greenfield seeks an award of declaratory and injunctive relief, compensatory damages, litigation-related costs and expenses, and attorney fees.

## Parties, Jurisdiction, and Venue

4. At all times pertinent to this mater, Mr. Greenfield has been a citizen of the State of Florida with a permanent residence in Palm Beach County, Florida. Mr. Greenfield was a student at FSU from 2015 through 2018 and paid fees and tuition for the classes he took while a student at FSU.

5. At all times pertinent to this matter, Defendant FSU has been a public university with its main campus in Tallahassee, Florida.

6. At all times pertinent to this matter, Defendant FSUBOT has been organized and existing under the Laws of the State of Florida, has been a public body corporate for FSU within the meaning of Section 1001.72, Florida Statutes, and is charged by law with administration of FSU.

7. Mr. Greenfield has a disability and his claims are made pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act of 1973.

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

9. Declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202.

10. Venue is proper in the Tallahassee Division of the U.S. District Court in the Northern District of Florida pursuant to 28 U.S.C. § 1391 because the acts and omissions giving rise to this matter took place in this judicial district, and, at all times relevant to this action, the Defendants owned property in and conducted business in this judicial district.

## Factual Allegations

11. Mr. Greenfield was a student enrolled at FSU, majoring in geology. Mr. Greenfield attended classes at the main campus in Tallahassee, Florida, from the Fall of 2015 through the Spring of 2018.

12. Mr. Greenfield was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD), which is a mental impairment, and also Written Language Disorder (WLD) while in the third grade.

13. Mr. Greenfield's ADHD and WLD disabilities substantially limit his ability to undertake certain major life activities, including sustained attention, learning, reading, concentrating, thinking, and writing.

14. During Mr. Greenfield's elementary and secondary education, as well as during his undergraduate studies, he has requested, has been provided with, and continues to be provided with accommodations, including but not limited to notetaking assistance; access to a quiet, reduced-distraction environment for taking a test or exam; additional time for taking tests and exams; use of a graphing calculator; flexible deadlines for assignments, tests, and exams; and audio and video recordings of lectures.

15. As Mr. Greenfield had done at the beginning of each semester while at FSU, Mr. Greenfield went to the Student Disability Resource Center (SDRC) in August 2017 to request disability-related accommodations specific to his needs. The SDRC provided Mr. Greenfield with a letter outlining the accommodations for which he was entitled, including notetaking assistance.

16. On or about August 22 or 24, 2017, Mr. Greenfield attended his first class for Minerology and Crystallography (GLY3200) which was being taught by Assistant Professor of Geology, Mainak Mookherjee ("Professor M"). Professor M told the class that they needed to rely heavily on material provided through his oral lectures and his hand-drawn whiteboard diagrams and derivations in order to pass the course. Professor M also told the class orally and through his syllabus that they would need to take good notes to pass the class, and also that he would be providing

PowerPoints that might be helpful but that the information contained therein and in the textbook would be insufficient for passing the course.

17. On September 6, 2017, Mr. Greenfield informed Professor M about his need for notetaking assistance. Professor M responded that he would personally put together and upload notes for Mr. Greenfield. On or before September 26, 2017, Professor M uploaded a set of handwritten notes to Canvas, an electronic online portal used by FSU at the time.

18. Professor M failed and refused to provide any further notes or note-taking assistance to Mr. Greenfield after September 26, 2017.

19. On approximately October 17 or 18, 2017, Mr. Greenfield met with Professor M in Professor M's office and reminded Professor M of Mr. Greenfield's need for notes. During this meeting, Professor M invited another student into Professor M's office to hear part of the exchange despite the confidential and sensitive nature of what was being discussed. Mr. Greenfield was embarrassed and humiliated as a result of this meeting. Professor M did not agree to provide notes or a notetaker.

20. Near the end of a class on October 19, 2017, during which a test was being administered, Professor M announced that everyone had 20 minutes to complete the exam, "except of course for Alex [Mr. Greenfield]—he gets extra

time." This event was reckless and caused Mr. Greenfield to suffer significant embarrassment.

21. In response to yet another request for notetaking assistance on October 23, 2017, Professor M told Mr. Greenfield that he was not responsible for providing notes. Mr. Greenfield suggested an alternative: student-based notetaking assistance. Mr. Greenfield requested that only discreet inquiries be made and no public announcement because of the embarrassment it would now cause Mr. Greenfield in light of Professor M's October 19, 2017 announcement to the class.

22. On approximately October 26 or 31, 2017, Mr. Greenfield met with a senior faculty member seeking advice and was told that notetaking assistance was the best approach for Mr. Greenfield to succeed in Professor M's class.

23. On November 14, 2017, Mr. Greenfield completed an exam at the SDRC test center and then went to Professor M's class for the lecture. Even though Professor M knew that Mr. Greenfield had completed the exam, Professor M told the class that they "would not be receiving their tests back because one of their classmates had not yet taken the exam." This reference was to Mr. Greenfield, and his classmates understood that, causing Mr. Greenfield to suffer embarrassment.

24. On November 21, 2017, Mr. Greenfield learned that Professor M had announced to the class earlier in the month that because someone in the class "claimed to have an apparent emergency," their graded tests were being withheld.

The implication was that the person was Mr. Greenfield was malingering, even though he had missed a few classes due to a family emergency in South Florida, which had been coordinated with and confirmed by the Office of Case Management. Upon learning of this statement to the class, Mr. Greenfield was embarrassed and humiliated.

25. On November 21, 2017, Mr. Greenfield informed the SDRC that he had not received notetaking assistance since late September 2017, shortly before the first exam, and that he had received no supplemental notes needed for the second and third exams.

26. Later on November 21, 2017, Mr. Greenfield met with Professor M in Professor M's office and again requested notetaking assistance, to which Professor M responded that it was not his (Professor M's) responsibility. Professor M shouted this statement in a loud voice with an open door, allowing others to overhear the conversation. Professor M said that he had "gone above and beyond what was expected of him" and that he had no obligation to assist with notes for the class. Mr. Greenfield again suffered embarrassment and humiliation.

27. After the interaction with Professor M on November 21, 2017, Mr. Greenfield reported the incident to the SDRC. Mr. Greenfield requested that the matter be addressed in a discreet and confidential manner without confrontation.

28. On November 28, 2017, Spencer Scruggs with the SDRC set up a meeting involving Professor M and Mr. Greenfield.  Mr. Scruggs held the meeting as if it were an informal hearing of some kind.  After both sides presented their position on the issue of notetaking assistance, Mr. Scruggs said he that was siding with Professor M and that supplemental notetaking assistance was not required.  Mr. Scruggs took the position that as long as Professor M was providing information in a PowerPoint format, nothing more was needed.

29. As a result of the informal hearing of sorts conducted by Mr. Scruggs and the SDRC on November 28, 2017, Mr. Greenfield suffered severe humiliation and disrespect.

30. Later on November 28, 2017, against Mr. Greenfield's adamant request that no public email be sent to the entire class about his need for notetaking assistance, Professor M sent an email to the entire class stating that a student in the class with a disability needed assistance with notetaking.  Appreciating that the other students knew the identity of the student with a disability needing assistance, this incident was extremely embarrassing to and further indignified Mr. Greenfield.

31. Subsequent to the November 28, 2017, SDRC informal hearing, FSU offered Mr. Greenfield a pass/fail option for Professor M's class, which Mr. Greenfield declined.

32. On November 29, 2017, Mr. Greenfield met with Dr. Allison Crume, Vice President of Student Affairs, who appeared troubled by the events that Mr. Greenfield described, and Dr. Crume recommended that Mr. Greenfield speak with Dr. Jennifer Buchanan.

33. On November 30, 2017, Mr. Greenfield met with Dr. Buchanan. After Mr. Greenfield explained the situation, Dr. Buchanan recommended that Mr. Greenfield speak with Dr. Jim Tull, the head of the geology department at that time.

34. On December 1, 2017, Mr. Greenfield met with Dr. Tull, who acknowledged that Professor M should not have disclosed Mr. Greenfield's disabilities or need for accommodations to anyone. Dr. Tull recommended that Mr. Greenfield speak with Dr. Odom, another professor in the geology department, and request that Dr. Odom mediate another meeting between Professor M and Mr. Greenfield. Despite Mr. Greenfield's repeated efforts to reach Dr. Odom, Mr. Greenfield never received a call or email back from Dr. Odom, and no such meeting ever occurred.

35. On December 6, 2017, Professor M told Mr. Greenfield that Mr. Greenfield was not considerate of other students' needs and that Mr. Greenfield did not take into consideration anyone else's point of view. In response, Mr. Greenfield offered to take a test a day earlier than he had originally planned. Despite this offer, Professor M told Mr. Greenfield to "do whatever you want to do!" "Do what works

for you!" Mr. Greenfield suffered embarrassment and humiliation as a result of this exchange, all tied to Mr. Greenfield's disabilities.

36.     The culmination of a full semester's worth of FSU's repeated discrimination against Mr. Greenfield based on his disabilities and the humiliation, degradation, and embarrassment he suffered led to Mr. Greenfield developing PTSD and a number of associated symptoms including low self-worth; feelings of inadequacy; an aversion to addressing or interacting with university administrators, professors, and teachers; a physical trauma response and other physical symptoms; and exacerbations of existing ADHD and WLD symptoms including an inability to concentrate on assignments and learn.

37.     Without notetaking assistance for Professor M's class, with PowerPoints that were of virtually no value, and without a textbook upon which the course was based, Mr. Greenfield was not only denied reasonable, requested accommodations and discriminated against, he was left to learn the material on his own. Mr. Greenfield spent hundreds of hours during the course of the semester doing his own research and attempting to independently learn material that should have otherwise been provided through notetaking assistance.

38.     By spending so much time researching and studying for Professor M's class, Mr. Greenfield was unable to devote sufficient time to his other two classes.

Mr. Greenfield subsequently received failing grades in those other two courses: GLY4544C and PHY2049C.

39. For the Spring 2018 semester, Mr. Greenfield enrolled in a reduced course load. While then undiagnosed, the PTSD symptoms that Mr. Greenfield experienced during that semester hampered his ability to perform academically. Mr. Greenfield failed to complete each of the two courses in which he was enrolled (GLY3310C and PHY2054C), and he received failing grades for both classes. Mr. Greenfield then withdrew from FSU.

40. Either due to the passage of time or upon Mr. Greenfield's withdrawal from FSU, an incomplete grade from the Fall 2016 semester (STA2122) was converted to a failing grade. The professor for that course had assured Mr. Greenfield that the incomplete grade, even if converted to a failing grade, could be changed once he was able to take and pass the final exam for that course. Because of Mr. Greenfield's withdrawal from FSU, that option was no longer available.

41. In the Fall of 2018, Mr. Greenfield attempted to take classes in South Florida but was unable to overcome the PTSD symptoms and had to withdraw before completing the semester.

42. In 2019, Mr. Greenfield sought the expertise of specialists at the University of Colorado's START Center (Stress, Trauma, Adversity Research and Treatment), within the Department of Psychiatry.

43. The investigations carried out by the START Center team revealed that Mr. Greenfield was suffering from PTSD and that it was directly attributable to the events that occurred at FSU in the Fall of 2017.

44. As a result of the PTSD, Mr. Greenfield suffers from a number of debilitating symptoms that have made it much more difficult, expensive, and time-consuming to complete his degree in geology.

45. Desiring to complete a degree in geology and attempting to avoid any triggering events that would exacerbate his PTSD, Mr. Greenfield was forced to enroll in a university out of state, choosing the University of Wyoming.

46. Mr. Greenfield has had to reduce his course-load due to the PTSD symptoms, which has therefore extended the time needed to complete his degree.

47. Enrollment in a new program, which was necessary due to the PTSD symptoms he suffers, subjected Mr. Greenfield to a requirement to earn an additional 45 credit hours, which also extended the time needed to complete his degree and added more tuition and fees to complete his degree, and he also incurred relocation costs.

48. The Defendants FSU and FSUBOT discriminated against Mr. Greenfield based on his specific disabilities and failed to provide proper, reasonable, and timely accommodations for notetaking.  When accommodations were provided, they were inadequate.

49. The Defendants enabled and condoned the violations of the ADA and Section 504 and did so with deliberate indifference.

50. Mr. Greenfield has requested on numerous occasions that the courses and failing grades be removed from his transcript as an accommodation, and Defendants have continued to deny these requests.

51. Mr. Greenfield has requested on numerous occasions that he be refunded for the fees and tuition associated with the five courses at issue as an accommodation, and Defendants have continued to deny these requests.

### Count I – Title II of the ADA

52. Mr. Greenfield restates and incorporates by reference each of the above allegations in paragraphs 1 through 51.

53. Mr. Greenfield suffers from ADHD, which is a mental impairment, and also from WLD.

54. Mr. Greenfield's ADHD and WLD disabilities substantially limit his ability to undertake certain major life activities, including learning, reading, concentrating, thinking, and writing. Accordingly, he is considered an individual with a disability under the ADA, 42 U.S.C. § 12102(1), (2).

55. Mr. Greenfield is an individual with a disability who meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by FSU and FSUBOT, with or without reasonable modifications

to FSU's and FSUBOT's rules, policies, and practices or the provision of auxiliary aids and services. Mr. Greenfield is therefore a qualified individual with a disability under the ADA, 42 U.S.C. § 12131(2)

56. FSU and FSUBOT are public entities under Title II of the ADA, 42 U.S.C. § 12131(1).

57. Title II provides that government entities are not to discriminate against a qualified individual with a disability.

58. FSU and FSUBOT knew about Mr. Greenfield's disability and had opportunities to avoid discrimination. However, FSU and FSUBOT acted with deliberate indifference to Mr. Greenfield's disability either through thoughtlessness of the situation or benign neglect.

59. FSU and FSUBOT discriminated against Mr. Greenfield on the basis of his disability with deliberate indifference, in violation of Title II of the ADA.

60. Through their discriminatory actions, Defendants have denied Mr. Greenfield meaningful participation and equal access to their programs offered to other students.

61. As a direct and proximate cause of Defendant's actions, Mr. Greenfield suffered extreme embarrassment, humiliation, indignities, and the denial of basic respect. This type of discrimination can and does cause psychological and

physiological trauma to its victims, and in Mr. Greenfield's case, led to physical and emotional distress and PTSD.

62.     Through their disability-based discriminatory actions made with deliberate indifference to Mr. Greenfield, Defendants have caused physical, mental, and financial harm to Mr. Greenfield.

63.     Mr. Greenfield should be made whole to the extent possible and compensated for these serious, life-altering, and stigmatizing injuries.

## Count II – Section 504 of the Rehabilitation Act

64.     Mr. Greenfield restates and incorporates by reference each of the allegations set forth above in paragraphs 1 through 51.

65.     Mr. Greenfield is a qualified individual with a disability.

66.     Mr. Greenfield suffers from ADHD, which is a mental impairment, and also from WLD.

67.     Mr. Greenfield's ADHD and WLD disabilities substantially limit his ability to undertake certain major life activities, including learning, reading, concentrating, thinking, and writing. Accordingly, he is considered an individual with a disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).

68.     Mr. Greenfield is an otherwise qualified individual with a disability under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a).

69. During the times relevant to this proceeding, FSU and FSUBOT were a "program or activity" and received federal financial assistance, such as federal student loans and grants, and were therefore subject to the anti-discrimination laws under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), (b)(2)(A).

70. Section 504 provides that government entities are not to discriminate against a qualified individual with a disability.

71. FSU and FSUBOT knew about Mr. Greenfield's disability and had opportunities to avoid discrimination. However, FSU and FSUBOT acted with deliberate indifference to Mr. Greenfield's disability either through thoughtlessness of the situation or benign neglect.

72. Defendants FSU and FSUBOT have discriminated against Mr. Greenfield on the basis of his disability with deliberate indifference, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

73. Through their discriminatory actions, Defendants have denied Mr. Greenfield meaningful participation and equal access to their programs offered to other students.

74. As a direct and proximate cause of Defendant's actions, Mr. Greenfield suffered extreme embarrassment, humiliation, indignities, and the denial of basic respect. This type of discrimination can and does cause psychological and

physiological trauma to its victims, and in Mr. Greenfield's case, led to physical and emotional distress and PTSD.

75. Through their disability-based discriminatory actions made with deliberate indifference to Mr. Greenfield, Defendants have caused physical, mental, and financial harm to Mr. Greenfield.

76. Mr. Greenfield should be made whole to the extent possible and compensated for these serious, life-altering, and stigmatizing injuries.

## Attorney Fees

77. Mr. Greenfield is entitled to and seeks an award of reasonable attorney fees, costs, and expenses in this matter.

## Jury Demand

78. Mr. Greenfield demands a trial by jury.

## Relief Requested

**WHEREFORE,** Mr. Greenfield respectfully demands judgement against Defendants Florida State University and the Florida State University Board of Trustees awarding:

A. A judgement declaring that Defendants' acts and omissions were discriminatory, reflected "deliberate indifference," and violated Title II of the ADA and Section 504 of the Rehabilitation Act of 1973;

B.  Damages in the amount of $4,565.45 for reimbursement of tuition and fees for the five courses at issue;

C.  Damages in the amount of $160 for reimbursement for medical expenses related to PTSD treatment and not covered by insurance;

D.  Damages in the amount of $2,900 for additional, associated mental health treatment;

E.  Damages in the amount of $9,253.82 for prorated student loan interest and prorated housing costs incurred during the Fall 2016, Fall 2017, and Spring 2018 semesters;

F.  Damages in the amount of $27,700 for additional and out-of-state tuition, and $4,000 for relocation costs.

G.  Additional compensatory damages in the amount of $240,000 for lost wages caused by a four-year delay in obtaining a bachelor's degree in geology;

H.  Injunctive relief requiring FSU to remove the five courses and the associated grades at issue from Mr. Greenfield's official transcript;

I.  Injunctive relief requiring FSU to conduct annual training for all of its faculty and staff regarding obligations under the ADA and Section 504 of the Rehabilitation Act of 1973;

J.  Costs and litigation expenses incurred in this matter;

K.  Attorney fees pursuant to 42 U.S.C. § 12205, and 29 U.S.C. § 794a (b); and

L.  Such other and further relief as the Court may deem just and proper.

Dated this 15th day of October, 2021.

Respectfully submitted,

*Angela R. Morrison*
Angela Rae Morrison
Morrison Law
Florida Bar No. 855766
2039 Centre Pointe Blvd., Suite 201
Tallahassee, FL 32308
(850)270-5447
amorrison@amorrisonlaw.com

*Counsel for Plaintiff, Alexander Greenfield*